## W. B. JONES ET AL.
### v.
## JOHN B. HUNTER.

*Injunctions—Enforcement of Judgment—Bankruptcy Proceedings—Effect of—Unauthorized Discharge of Judgment—Dismissal of Bill to Annul Discharge—Adjudication on Merits—Alleged Ratification of Discharge.*

1. A judgment obtained by default in an action commenced after the defendant had been adjudged a bankrupt, and discharged, is not rendered void or released by such discharge.

2. Where a judgment had been discharged of record, by a party acting without authority from the judgment creditor, the dismissal of a bill filed in another county from that in which the judgment was rendered, to annul such discharge, does not act as an adjudication upon the validity thereof.

3. In the case presented it is *held:* That the acceptance of $1,000 by the judgment creditor for the assignment of his interest in the judgment, to one alleged to be in community with the party who discharged the judgment, without authority, did not, under the circumstances, act as a ratification of such discharge.

[Opinion filed February 14, 1890.]

APPEAL from the Circuit Court of Logan County; the Hon. GEORGE W. HERDMAN, Judge, presiding.

Messrs. BEACH & HODNETT, and W. B. JONES, for appellants.

The question whether the discharge would have been a good defense in bar in the State Court was never presented; default was taken and judgment rendered. It was a defense that can not now be made available for any purpose, directly or collaterally. Bowen v. Eichel, 91 Ind. 22; see 46 American Reports, 574; Eyster v. Gaff, 91 U. S. 524; Dimock v. Revere Copper Co., 117 U. S. 559; Palmer v. Merrill, 57 Me. 26; Bellamy v. Woodson, 4 Ga. 175; Stewart v. Green, 11 Paige, 535; Goodrich v. Hunton, 2 Woods, 137; Holden v. Sherwood, 84 Ill. 92; Byers v. Bank of Vincennes, 85 Ill. 425–6.

The decisions of our Supreme Court are clear, plain and unequivocal, holding a judgment obtained as the judgment here, of full and binding force and effect; and that a discharge in bankruptcy, not pleaded or brought to the notice of the State Court, constitutes no defense to such judgment in law or equity. Boynton v. Ball, 105 Ill. 627; Holden v. Sherwood, 84 Ill. 92; Byers v. National Bank of Vincennes, 85 Ill. 423.

Counsel further assert that the judgment was not a new debt, but a security for the old debt. This proposition we expressly deny, and assert the law of this State to be, that the original debt, claim or demand was merged for all purposes in the judgment and could not be used for any purpose thereafter. Boynton v. Ball, 105 Ill. 627; Wayman v. Cochrane, 35 Ill. 152; Runnamaker v. Cordray, 54 Ill. 303; Harpstrite v. Vasel, 3 Ill. App. 121.

Negligence of attorney is negligence of client. Clark v. Ewing, 93 Ill. 572; Freeman on Judgments, Sec. 112.

The decree in the Sangamon Circuit Court case, not being a decree on the merits of the case, is not a bar or estoppel. Freeman on Judgments, Secs. 260, 261, 263; Smith's Leading Cases, page 673; Freeman on Judgments, Secs. 264, 270; W. A. & G. S. P. Co. v. Sickles, 24 How. (U. S.) 333; Bigelow on Estoppel, pages 50, 51, 53, note 2, 55 text, and note 4, 57;

Hamer v. Brown, 16 How. (U. S.) 354; Waddle v. Ishe, 12 Ala. 308; Greenleaf on Evidence, Secs. 529, 530; Wadsworth v. Connell, 104 Ill. 374–5.

Defendants proposed to prove by W. B. Jones, who was the leading attorney for Burney in the Sangamon Court case, and participated in the trial, that the question of the court's jurisdiction was distinctly made and argued by Hunter's attorneys, and the case went off on the question of the court's jurisdiction and not on the merits. The court refused to admit that evidence and defendant excepted. The court's ruling in that respect was clearly error. Freeman on Judgments, Secs. 272, 274, 821; W. A. & G. S. P. Co. v. Sickles, 24 How. (U. S.) 333; Packet Co. v. Sickles, 5 Wall. 580.

Messrs. Brown, Wheeler & Brown, for appellee.

When a judgment is rendered against a bankrupt, in case of suit brought after adjudication for a provable debt existing at the time of the petition, the judgment does not merge the original cause of action so as to constitute a new debt, but is merely a new security for an old debt, and the former debt being barred by the discharge, the judgment is also barred. McDougald v. Reid, 5 Ala. 810; Imlay v. Carpenter, 14 Cal. 173; Blake v. Bigelow, 5 Ga. 437; Anderson v. Anderson, 65 Ga. 518; Rogers v. Ins. Co., 1 La. Ann. 161; McDonald v. Ingraham, 30 Miss. 389; Thompson v. Hewitt, 6 Hill, 254; Johnson v. Fitzhugh, 3 Barb. Ch. 360; Dresser v. Brooks, 3 Barb. 429; Fox v. Woodruff, 9 Barb. 498; Cromwell v. Gallup, 17 Hem. 59; Monroe v. Upton, 50 N. Y. 593; Dawson v. Hartsfield, 79 N. C. 334; Dick v. Powell, 2 Swan, 632; Stratton v. Perry, 2 Tenn. Ch. —; Harrington v. McNaughton, 20 Vt. 293; Downer v. Rosnell, 26 Vt. 397; Stobknell v. Woodward, 52 Vt. 234.

So, under the English bankrupt acts, such a judgment is discharged. Dinsdale v. Eames, 4 Moore, 350.

The fact that the pendency of the bankruptcy proceedings is not pleaded or suggested in the action in which the judgment is recovered, will not prevent the discharge from being a bar. Rogers v. Ins. Co., 1 La. Ann. 161; Anderson v. Anderson, 65 Ga. 518.

The debtor may have an injunction against the judgment. Stratton v. Perry, 2 Tenn. Ch. 633.

PLEASANTS, P. J.   This was a bill in equity, filed by appellee against appellants May 21, 1888, to enjoin certain proceedings taken by them to enforce the judgment referred to in Burney, for use, etc., v. Hunter, decided at this term.

It avers that in March, 1877, an action was brought in the Circuit Court for Logan County by Burney against complainant and others on two promissory notes made by them, in which complainant alone was served with process, and that judgment therein was taken against him by default in September, 1878; that complainant had been adjudicated a bankrupt by the United States District Court for the Southern District of Illinois in June, 1876, and was discharged in April, 1878, and thereby relieved from the payment of said notes, which were provable in said proceedings; that he had retained counsel for the purpose of pleading said discharge as a bar to said action, but he neglected to do so; that Randolph & Leutz were the attorneys for plaintiff in said action; that complainant sued out a writ of error from the Appellate Court for the Third District to reverse said judgment; that while the same was pending, Leutz applied to him for a compromise of said judgment; that he represented he had authority, by power of attorney from the plaintiff, to make a compromise and settlement thereof; that complainant's attorneys conducted the negotiations on his part, which resulted in his agreement to give Leutz his notes for $1,500, in equal installments at one and two years, and at his request complainant arranged with the First National Bank of Springfield to discount them for $1,350; that this sum was paid to Leutz on the 6th of October, 1880, and thereupon an entry of satisfaction in full of said judgment was made by Leutz, and said writ of error dismissed; that complainant supposed that said Leutz really had the authority he claimed and that said settlement was valid, until September 10, 1884, when he received notice from W. P. Randolph and W. B. Jones, appellees, as attorneys for Burney, of a motion to be made to expunge said entry of sat-

isfaction; that said motion was made, but was by leave of the court dismissed without prejudice; that in April, 1885, said attorneys filed a bill in the Circuit Court for Sangamon County, on behalf of said Burney for use of Jones against complainant, for the same purpose, and that on October 2, 1887, on hearing upon the pleadings and proofs, a decree was made dismissing said bill; that on the 7th of January, 1888, they sued out a *scire facia* to revive said judgment, and two days thereafter an attachment in aid of an action of debt on said judgment, against complainant, which proceedings are now pending, and that he has also received from them a notice of motion for the May term, 1888, of said Circuit Court for Logan County to expunge said entry of satisfaction. These proceedings are by the bill sought to be enjoined. It further avers that about one year before the filing of this bill, Burney brought a suit in the United States Circuit Court for the Southern District of Illinois against Randolph & Leutz, to recover the money so received by Leutz from complainant, and that pending said suit said Randolph, through Jones, who had acted as attorney for Burney in all these proceedings since the rendition of said judgment, opened negotiations with Burney for the purchase of said judgment and settlement of said suit, and on November 25, 1887, obtained an assignment thereof from Burney to Jones, in name, for $1,000; that said money was furnished by Randolph and so paid for his benefit; that Randolph, as the partner of Leutz, was primarily liable to Burney for the money received by Leutz; that the $1,000 furnished to Jones and by him paid to Burney, as aforesaid, was but a part of that for which Randolph was so liable, and its acceptance by Burney from Randolph & Leutz, knowing that the judgment had been compromised for $1,500, and relinquishment of all claim to that sum, was in effect a ratification by him of said compromise.

Thus the grounds for injunction, as set forth in the bill, are, first, that the judgment in question, having been obtained after the discharge of the defendant in bankruptcy and in an action commenced after he had been adjudged a bankrupt, without leave of the bankruptcy court, is void, or released by

such discharge; second, that the decree of the Sangamon
Circuit Court dismissing the bill there filed to expunge or
annul the entry of satisfaction, is an adjudication against the
right to enforce said judgment; and third, that the acceptance
by Burney of the $1,000, ostensibly for the assignment of his
interest in said judgment to Jones, was, under the circum-
stances, a ratification by him of the compromise and settle-
ment of said judgment as made by Leutz. A preliminary
writ was granted thereon. The answers of the defendants
denied the material averments of the bill, as to the acts *in
pais* of the parties respectively in that behalf named, and like
issue was made upon a cross-bill by Jones against Hunter.
On final hearing upon these pleadings and the proofs, the
cross-bill was dismissed and the injunction made perpetual.

. The first of these grounds presents a pure question of law,
the facts being undisputed. The action was brought after
Hunter was adjudged a bankrupt, and the judgment obtained
after his discharge. The debt before judgment was provable
in the bankruptcy proceedings. It was admitted upon the
hearing, on the one side, that this debt was not scheduled, and
on the other, that Hunter was not, in fact, aware of its exist-
ence, the notes having been made by another member of his
firm in the name of the firm. Whether Burney personally
had any notice of the bankruptcy proceedings does not appear,
but that he had not the statutory notice by mail is to be
inferred from the fact that his name did not appear in the list
of the creditors.

By Sec. 5106 of the U. S. Stats. (Bankrupt Act of 1867),
it was provided that "No creditor, whose debt is provable,
shall be allowed to prosecute to final judgment any suit at
law or equity therefor, against the bankrupt, until the ques-
tion of the debtor's discharge shall have been determined;
and any such suit or proceedings shall, upon the application of
the bankrupt, be stayed to await the determination of the court
of bankruptcy on the question of the discharge;" and after
excepting certain debts from the operation of the discharge,
the act further declares (Sec. 5119) that "a discharge in bank-

ruptcy, duly granted, shall, subject to the limitation imposed by the two preceding sections, release the bankrupt from all debts, claims, liabilities and demands which were or might have been proved against his estate in bankruptcy."

It is seen that the prohibition in Sec. 5106 is not in terms against the commencement of a suit, but only against its prosecution to a final judgment; nor does it make any distinction between suits commenced before the debtor is adjudged a bankrupt and suits commenced after such adjudication. It is conceded by counsel that as to the former, whatever may be the rule elsewhere, it is held in this State that the subsequent adjudication would not *per se* suspend the power of the court, but that the defendant may make formal application, as provided in said section, to stay its proceedings therein until the question of his discharge shall have been determined, and plead it when obtained, if he would have its effect to bar the action. Holden v. Sherwood, 84 Ill. 94; Byers v. Bank of Vincennes, 85 Ill. 425. But it is contended that where suit is brought in a State court after such adjudication, without leave of the bankrupt court, a discharge, though not pleaded, will bar a judgment for the debt. This proposition is not claimed to be founded in the letter of the bankrupt act, but in its spirit. It is said that upon such adjudication the bankrupt court strips him of all his estate, and undertakes to administer it for the benefit of all his creditors; that he is presumably without means to make a defense ; that the judgment in such case does not merge the original cause of action, but is merely a new security for an old debt, and the former debt being barred by the discharge, the judgment also is barred; and that leave of the bankrupt court to bring such a suit is jurisdictional, as in case of a suit against a receiver without leave of the court that appointed him.

We do not understand that the judgment would be a lien upon any of the debtor's estate in the hands of his assignee in bankruptcy, or interfere in any way with its administration for the benefit of his creditors whose claims are proved in the bankruptcy court. Poverty of the debtor is no bar to a prosecution to judgment for the debt. In Boynton v. Ball, 105

Ill. 627, it was held, over the authorities cited by counsel, that a judgment obtained against one after he is adjudged a bankrupt does create a new debt—"a debt which can not be proved against the bankrupt's estate; that the indebtedness existing prior to the recovery becomes merged in the judgment"—citing In re Gallison, 2 Lowell C. C. 74, in which it was held "upon careful examination of the decisions" that such a judgment "creates a new debt, and that the judgment creditor can not oppose the discharge because he has no provable debt and because the discharge will be no bar to the judgment." To the same point the court cites also Bradford v. Rice, 102 Mass. 472, in which the further reason why the bankrupt can not impeach such a judgment is given, that the judgment creditor by thus changing the form of his debt elects to look to his debtor personally and to abandon the right to prove against his estate, and the debtor, who might have protected himself by applying for a stay and pleading his discharge when obtained, by omitting to do so waives the right to set up his certificate of discharge against the new debt. Our Supreme Court adopts that reason also, and though in the case before it the suit was commenced before the defendant was adjudicated a bankrupt, yet because he had time and opportunity to interpose that adjudication for a stay of the proceeding until he could obtain a determination of the question of his discharge and plead it if obtained, but neglected to do so and voluntarily submitted to a trial, he was held bound by the judgment. So here, Hunter was personally served with process. He then knew that he had been adjudged a bankrupt, and neglected to use the means provided by the act for his protection against a judgment; for the negligence of his attorney is imputable to him. We also see no reason why the rule should not apply here, as well as if the suit had been brought before such adjudication, and in case of a judgment by default as upon trial and verdict. It appears that appellee filed a bill in equity to set aside the judgment and let him in to defend, on the ground of the neglect of his attorney, and that it was dismissed on demurrer thereto sustained. If the argument here made in his behalf is sound, he

might have made a vigorous attempt to defend under divers pleas in bar, and being defeated, yet have his injunction against all proceedings to enforce the judgment.

In the case of a suit against a receiver, as such, the court thereby has actual notice of the situation—and judicially knows that he is but an instrument of the court that appointed him, and not to be sued in another without its leave. Not so here.

For these reasons we are of opinion that the proceedings in bankruptcy did not affect the validity of the judgment.

As to the claim that Burney ratified the compromise made or attempted to be made by Leutz, we think the averments of the bill on which it rests are not sustained by the proofs. So far as it appears the law firm of Randolph & Leutz was retained to bring the suit against Hunter only in the usual way and had only such power and authority in respect to the judgment obtained as were conferred by such retainer. That did not extend to a compromise of it. Leutz did not pretend to act in that matter by virtue of such retainer, or as one of said firm. Hunter must be presumed to have known, and his learned counsel who conducted the negotiation on his part certainly did know, that he had no such authority by virtue of his retainer from Burney and his relation to the firm. They required evidence of special authority to him, without regard to the firm, but unfortunately waived its production through a not unnatural faith in his assurances. We do not see upon what principle Randolph, merely by his relation to Leutz as his partner in the practice of law and in the prosecution of that suit under such a retainer, can be held primarily liable to Burney for the money fraudulently obtained by Leutz while avowedly so acting and clearly understood by Hunter to be so acting. Again, it is not shown, as averred, that for the formal assignment of the judgment to Jones in name, Burney received anything from Randolph & Leutz, nor anything from Randolph. The proof is he did not know or suspect Randolph in the transaction. He dealt alone and exclusively with Jones. How or from whom Jones obtained the money he paid can not be material. If Randolph fur-

nished every dollar of it and under an express agreement from Jones to give him an interest in the judgment or to assign it to him, how would those facts tend to show a ratification by Burney? Surely, that must depend on Burney's intentional act. Neither by his intention nor by his act, in the case supposed, was anything conveyed to or acquired by Randolph; the conveyance was to Jones, and to him not as agent of Randolph, but in his own right. Whatever interest Randolph has in the judgment was acquired from Jones. Now Jones was a competent purchaser. His purchase, if made, was lawful, and not champertous; and if it was champertous, that would not concern Hunter. Being lawful, the assignment transferred to the assignee all the rights in the subject-matter which Burney had before it was made and would have continued to have if it had not been made. Such was the manifest intention of the assignor. He did not receive the $1,000 in satisfaction or on account of his claim for the compromise money received by Leutz, but for his interest in the judgment, if the evidence is to be believed; and though it had the effect to extinguish his right thereto, if any he had, and to dismiss his suit therefor, it was none the less the consideration for the $1,000. We hold the facts shown do not amount in effect to a ratification of the fraudulent compromise by Leutz, but are a distinct repudiation of it.

Our view of the character and operation of the decree of the Circuit Court for Sangamon County, dismissing the bill in Burney for use, etc., v. Hunter, is stated in the opinion filed in that case. For reasons therein given we think it was made, not upon the merits, but solely for want of jurisdiction. This seems evident in the light of the bill itself and of the evidence, without reference to the contemporaneous paper signed by the judge, which was offered in evidence in this case. It was, therefore, not an adjudication against his right to have the entry of satisfaction annulled by a court having jurisdiction of the person of the clerk and control of the docket, and to enforce by lawful means the judgment in question.

The decree herein was, in our opinion, against the law and the evidence. Decree reversed and cause remanded.

*Reversed and remanded.*